**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| THE REYNOLDS & REYNOLDS COMPANY, | **Case No: 1:12-cv-00848** |
| Plaintiff, | District Judge Thomas M. Rose |
| vs. | |
| SUPERIOR INTEGRATED SOLUTIONS, INC., | |
| Defendant. | |

**SUPERIOR INTEGRATED SOLUTIONS, INC.'S FIRST**
**AMENDED COUNTERCLAIM**

Defendant, SUPERIOR INTEGRATED SOLUTIONS, INC. ("SIS"), by and through undersigned counsel, files its First Amended Counterclaim as follows:

**Jurisdiction and Venue**

1.      SIS is a New Jersey corporation with its principal place of business in Edison, New Jersey.

2.      Reynolds is an Ohio corporation with its principal place of business in Kettering, Ohio, and this Court has personal jurisdiction over Reynolds.

3.      This Court has original subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. §§ 1331 and 1332. Subject matter jurisdiction is conferred under 28 U.S.C. § 1331 because this is an action arising under the laws of the United States. Subject matter jurisdiction is conferred under 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4.      This Court has subject matter jurisdiction over SIS's state law claims under 28

U.S.C. § 1332, as described above, and/or supplemental jurisdiction over these causes of action pursuant to 28 U.S.C. § 1367.

## General Allegations

5.    Reynolds is the largest provider of dealer management systems ("DMS") to auto dealers throughout the country, occupying a large percentage of the market.

6.    A DMS computer system allows auto dealers to efficiently organize and utilize numerous types of information necessary to operate their businesses, such as customer information, inventory information (e.g., vehicles and parts), and finance and insurance information (e.g., extended warranty information).

7.    Other companies, sometimes referred to as third-party application providers, sell software and other technology products to auto dealers that use the dealers' information that is maintained in the dealers' DMS.  An example is a software product that can automatically collect inventory and sales data daily from an auto dealer's DMS and provide that information to car buying websites such as Cars.com, and shopping networks across the country.

8.    Auto dealers depend upon these technology products from vendors to be competitive, and the products need data from the DMS to work.

9.    These software products used by the auto dealers must be integrated with the dealers' DMS computer systems, including Reynolds-brand DMS, in order to function in an optimal fashion.

10.    SIS develops and provides integration software that allows this necessary integration to occur between SIS's direct customers, the third-party application providers, and the dealers' DMS, including Reynolds-brand DMS.

11.    Reynolds does not want auto dealers to purchase third-party application

providers' products, because Reynolds wants to sell the dealers its own competing software products.

12.     Accordingly, Reynolds has instituted a "policy and practice" to prevent third-party access to its DMS, except where the third party is willing to become "Reynolds certified" for an exorbitant fee.

13.     Reynolds is actually shutting off or blocking computer access to third-party vendors extracting data from auto dealers' DMS throughout the country, preventing the dealers from using the third-party application providers' services at all.

14.     Reynolds is restricting data access of third-party vendors offering services to the auto dealers to force the auto dealers to purchase similar products being offered by Reynolds.

15.     Reynolds is, in effect, eliminating the purchase options of the auto dealers and preventing them from choosing the best available services.

16.     Reynolds locked the auto dealers into long-terms contracts for Reynolds-brand DMS before it began blocking third-party vendors from accessing their auto dealer customers own data.

17.     Reynolds' own Complaint reveals that Reynolds has been accessing and interfering with SIS's directory folders on computers belonging to the auto dealers.

18.     In its First Amended Complaint, Reynolds further admits that it entered SIS's internal support website and opened intellectual property belonging to SIS.

19.     Recently, Reynolds has intensified its efforts to prevent auto dealers from using third-party vendor services, and is using information it wrongfully acquired from the internal SIS support site to actively interfere with the Interface between SIS's integration software and the Reynolds-brand DMS on auto dealers' computers.

3

20.     Reynolds has already performed this interference with the SIS interface at approximately 50 auto dealerships, and the number appears to be growing.

21.     SIS has ongoing business relationships, including contracts in force, with its direct customers, the third-party application providers.

22.     SIS's customers, in turn, have ongoing business relationships, including contracts in force, with their customers, the auto dealers, approximately 40% of which use Reynolds-brand DMS.

23.     SIS therefore derives approximately 40% of its revenues by integrating third-party applications with Reynolds-brand DMS.

24.     All of SIS's business relationships depend on, among other things, SIS's ability to integrate its customers' software applications with their customers' DMS computer systems.

25.     Reynolds' current interference with the use of SIS's integration software is causing, and will continue to cause, SIS to lose its corporate goodwill in the marketplace, particularly among its direct customers and among thousands of auto dealers.

26.     In fact, as part of its efforts to restrict auto dealers from using third-party application providers' software products, including SIS's integration software, Reynolds is disparaging SIS in the marketplace.

27.     The auto dealers have been led to believe that they cannot do business with SIS or third-party application providers, or that if they do their data security will be compromised.

28.     SIS's direct customers and auto dealers are already suffering interruptions of their businesses due to Reynolds' conduct, and they will continue to suffer such interruptions if Reynolds' conduct is not enjoined.

## Count I – Tortious Interference with Contractual Relationships

29.     SIS restates and incorporates its responses to paragraphs 1 through 28, above.

30.     SIS maintained numerous existing contractual relationships with third-party application providers throughout the country, whereby SIS provides integration software that allows the third-party applications to work with Reynolds-brand DMS computer systems.

31.     Reynolds had actual knowledge of these relationships.

32.     Reynolds, intentionally and without justification, for the purpose of reducing competition and forcing the purchase of its own application products, interfered with SIS's contractual relationships by: a) interfering with SIS's integration software, thereby preventing SIS from properly performing under the contracts; b) blocking the third-party application providers' access to the data on Reynolds-brand DMS, thereby preventing contractual performance; and, c) notifying auto dealers that their data security would be compromised if they allowed SIS to institute and manage automated access, thereby discouraging auto dealers from using the products of SIS's customers, or allowing SIS to perform at their dealerships.

33.     SIS has suffered damages as a result of Reynolds' interference, including irreparable harm to its reputation and goodwill in the marketplace.

34.     Reynolds' actions have caused damages to SIS, including the loss of customers, lost revenue, costs incurred, and other special and consequential damages.

35.     Reynolds' interference continues today and will continue in the future if not enjoined by this Court.

WHEEFORE, SIS requests that this Court enter judgment in its favor and against Reynolds for damages including the value of lost customers, lost revenue, costs, other consequential and special damages, injunctive relief, and such other relief as this Court deems

just and proper.

### Count II – Violation of Section 1 of the Sherman Antitrust Act

36.     SIS restates and incorporates its responses to paragraphs 1 through 28, above.

37.     Reynolds' actions violate Section 1 of the Sherman Act, 15 U.S.C. § 1, *et seq*.

38.     Auto dealers' purchase of Reynolds-brand DMS has created an aftermarket of third-party applications intended to work and integrate with the Reynolds-brand DMS computer systems at the dealerships.

39.     That aftermarket is wholly derivative of and completely dependent upon the tying product of Reynolds-brand DMS, and Reynolds has complete economic power over the aftermarket.

40.      Reynolds is exercising its complete power over entry into this third-party application aftermarket by unlawfully tying products.  It is employing restrictions that interfere with integration software and block third-party applications' access to auto dealers' data in the Reynolds-brand DMS, unless the applications are Reynolds-brand products or "Reynolds certified."

41.     Reynolds' control over this aftermarket has a substantial negative effect on the volume of commerce and competition within the aftermarket by limiting which third-party applications can integrate with the Reynolds-brand DMS.

42.     Auto dealers were unaware of Reynolds' policies prohibiting access by third-party applications when they purchased Reynolds' DMS computer system.  Reynolds is therefore unlawfully tying its products without the knowledge or consent of the auto dealers or SIS.

43.      SIS has an economic interest in this aftermarket because it provides software that allows third-party applications to integrate with the Reynolds-brand DMS.

44.     Reynolds has an economic interest in limiting the aftermarket of third-party applications that can integrate with Reynolds-brand DMS to the tied products – Reynolds-brand or Reynolds certified applications in which it has an economic interest.

45.     Reynolds' control over this aftermarket has resulted in SIS losing customers and goodwill in the marketplace, because SIS is prevented from integrating the third-party applications with Reynolds-brand DMS.

46.     Reynolds' conduct has caused damage to SIS in the form of lost customers, lost revenue, costs, and other consequential and special damages.

47.     Reynolds' violations of the Sherman Act continue today and will continue in the future if not enjoined by this Court.

WHEEFORE, SIS requests that this Court enter judgment in its favor and against Reynolds for damages including the value of lost customers, lost revenue, costs, other consequential and special damages, injunctive relief, and such other relief as this Court deems just and proper.

### Count III – Violation of Section 2 of the Sherman Antitrust Act

48.     SIS restates and incorporates its responses to paragraphs 1 through 28, above.

49.     Reynolds' actions violate Section 2 of the Sherman Act, 15 U.S.C. § 1, *et seq*.

50.     Auto dealers' use of Reynolds-brand DMS has created an aftermarket of third-party applications designed to work and integrate with the Reynolds-brand DMS computer systems at the dealerships.

51.     Reynolds has complete power over this aftermarket and can limit access to the aftermarket by blocking third-party applications from accessing Reynolds-brand DMS.

52.     Reynolds willfully maintains this market power by forcing auto dealers using

Reynolds-brand DMS to purchase only Reynolds-brand applications or Reynolds-certified products, and blocking all applications and integration software from its systems except for those in which it has a financial interest.

53.     Reynolds is therefore unlawfully monopolizing the Reynolds-brand DMS application aftermarket, without the knowledge or consent of the auto dealers.

54.     Reynolds' monopolization results solely from its willful acquisition of that power, and is not the result of a superior product or business acumen.

55.     Reynolds is using its monopoly power to foreclose competition, gain a competitive advantage, and destroy competitors.

56.     SIS has an interest in this aftermarket because it provides software that allows third-party applications to integrate with the Reynolds-brand DMS.

57.     Reynolds' conduct has caused damage to SIS in the form of loss of goodwill in the marketplace, lost customers, lost revenue, costs, and other consequential and special damages.

58.     Reynolds' violations of the Sherman Act continue today and will continue in the future if not enjoined by this Court.

WHEEFORE, SIS requests that this Court enter judgment in its favor and against Reynolds for damages including the value of lost customers, lost revenue, costs, other consequential and special damages, injunctive relief, and such other relief as this Court deems just and proper.

### Count IV – Violations of Computer Fraud and Abuse Act

59.     SIS restates and incorporates its responses to paragraphs 1 through 28, above.

60. Reynolds-brand DMS computer systems are contained on computers owned by auto dealers across the country.

61. These computers are used in interstate commerce.

62. Reynolds is accessing the auto dealers' computers by utilizing and employing software to interfere with the Interface between its DMS on the auto dealers' computers and integration software, blocking access to third-party application providers attempting to integrate with the Reynolds DMS, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.

63. Reynolds' conduct is not authorized by the auto dealers.  In fact, the auto dealers want to work with the third party application providers that are attempting to access the auto dealers' own data on the Reynolds-brand DMS for the purpose of increasing the dealers' sales. Therefore, the auto dealers did not authorize Reynolds to access their computers to interfere with the Interface and damage their business.

64. By blocking access by the third-party applications to the auto dealers' data, Reynolds is impairing the integrity or availability of data, programs and information on the auto dealers' computers.

65. Reynolds actions cause damage to SIS because it provides software that allows third-party applications to integrate with the Reynolds-brand DMS on the auto dealers' computers, and Reynolds is intentionally blocking and interfering with that software.

66. Reynolds' actions have caused over $5,000 in damage to SIS over a one-year period, and caused other damages to SIS, including the loss of customers, lost revenue, costs incurred, and other special and consequential damages.

67.     Reynolds has further damaged protected computers by intentionally accessing SIS intellectual property on dealer-owned computers without authorization.

68.     Reynolds' violations of the Computer Fraud and Abuse Act continue today and will continue in the future if not enjoined by this Court.

WHEEFORE, SIS requests that this Court enter judgment in its favor and against Reynolds for damages including the value of lost customers, lost revenue, costs, other consequential and special damages, injunctive relief, and such other relief as this Court deems just and proper.

**Request for Temporary and Permanent Injunctive Relief for All Counts**

SIS requests that the Court enter a preliminary and permanent injunction requiring Reynolds to immediately cease blocking access by third-party application providers using SIS's integration software to Reynolds-brand DMS computer systems at auto dealerships throughout the country.

Unless Reynolds is enjoined from interfering with the SIS interface, SIS will be irreparably harmed by the loss of its customers and by the loss of the goodwill associated with those customer relationships, which is difficult to compute in money damages.  SIS, therefore, has no adequate remedy at law.

WHEREFORE, SIS respectfully requests that this Court ORDER and DECREE that:

a.     Reynolds is enjoined from interfering with, disabling or blocking any SIS integration software, or any third-party application providers utilizing SIS integration software, at any auto dealerships using Reynolds-brand DMS;

b.     Reynolds is enjoined from accessing and confiscating SIS intellectual property on computers owned auto dealerships, including auto dealerships that use Reynolds-

brand DMS, or found on SIS websites; and

c.      Reynolds is required to return any and all copies of SIS intellectual property it has

in its possession.

Respectfully submitted,


/s/ Keven Drummond Eiber
Keven Drummond Eiber (0043746)
Anastasia Wade (0082797)
BROUSE McDOWELL, LPA
600 Superior Avenue East, Suite 1600
Cleveland, OH 44114
Tel.: (216) 830-6830
Fax: (216) 830-6807
Email: keiber@brouse.com
Email: awade@brouse.com
*Attorneys for Defendant Superior Integrated Solutions, Inc.*


/s/ Christopher M. Harne
Mark L. Ornstein (pro hac vice)
Frank H. Killgore, Jr. (pro hac vice)
Christopher M. Harne (pro hac vice)
KILLGORE, PEARLMAN, STAMP,
  ORNSTEIN & SQUIRES, P.A.
P. O. Box 1913
Orlando, FL 32802-1913
Tel: (407) 425-1020
Fax: (407) 839-3635
Attorneys for Plaintiff
Email: mlornstein@kpsos.com
Email: fhkillgore@kpsos.com
Email: charne@kpsps.com
Email: jkerce@kpsos.com
*Attorneys for Defendant Superior Integrated Solutions, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that, pursuant to Local Rule CV 5.2(b), the foregoing document was electronically served through the Court's CM/ECF system on all counsel who are registered users of the system as provided in Fed. R. Civ. P. 5(b)(2)(e).  Any counsel of record not deemed to have registered for such electronic service were served with a true and correct copy of the foregoing by U.S. mail on this 28th day of February 2013.

Grant Harvey
Aundrea K. Gulley
Brian T. Ross
Ben Bireley
Gibbs & Bruns L.L.P.
1100 Louisiana, Suite 5300
Houston, TX 77002

David C. Greer
James H. Greer
Bieser, Greer & Landis LLP
400 PNC Center
6 North Main Street
Dayton Ohio 45402-1908

/s/  Christopher M. Harne
Christopher M. Harne, FBN: 0800791
*Attorney for Superior Integrated Solutions, Inc.*